[Cite as *State v. Tyson*, 2025-Ohio-3074.]

# COURT OF APPEALS OF OHIO

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

STATE OF OHIO,                        :

    Plaintiff- Appellee,          :

                                     No. 114691

    v.                             :

TAIJUAN TYSON,                        :

    Defendant-Appellant.          :

---

### JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED AND REMANDED
**RELEASED AND JOURNALIZED:** August 28, 2025

---

Criminal Appeal from the Cuyahoga County Court of Common Pleas
Case No. CR-24-693158-A

---

### *Appearances:*

Michael C. O'Malley, Cuyahoga County Prosecuting Attorney, and Megan Helton and Melissa Riley, Assistant Prosecuting Attorneys, *for appellee*.

Law Office of Schlachet and Levy, Jaye M. Schlachet, and Eric M. Levy, *for appellant*.

---

MICHELLE J. SHEEHAN, P.J.:

{¶ 1} Defendant-appellant Taijuan Tyson appeals his convictions and sentence. He raises four assignments of error for our review:

1. Appellant's pleas must be vacated in violation of Crim.R. 11 as not entered knowingly, intelligently and voluntarily where appellant was not informed of post release control and the consequences for a violation prior to entering his guilty pleas.

2. Appellant's pleas must be vacated in violation of Crim.R. 11 as not entered knowingly, intelligently and voluntarily where appellant was not informed of the consequences of being classified as a Tier II sex offender prior to entering his guilty pleas.

3. Appellant's sentence as journalized is clearly and convincingly contrary to law where he was improperly classified as a Tier III sex offender and five years of mandatory post release control was imposed on Count [1].

4. The trial court erred and abused its discretion when it denied appellant's pre-sentencing motion to withdraw guilty plea.

{¶ 2} After review, we find that the trial court's failure to inform Tyson at the plea hearing that by pleading guilty to attempted pandering sexually oriented matter to a minor, he would be subject to a mandatory term of five years of postrelease control (and the consequences for violating) and be classified as a Tier II sex offender (and the required registration requirements) did not prejudice Tyson. It is not clear on the face of the record that Tyson would not have entered into guilty pleas had the trial court given him the full postrelease-control and sex-offender advisements.

{¶ 3} However, we agree with Tyson that although the trial court properly notified him at the sentencing hearing that he was classified as a Tier II sex offender and the accompanying registration requirements, it improperly stated in the sentencing entry that he was classified as a Tier III sex offender and included the registration requirements for that classification. We further agree with Tyson that

although the trial court properly notified him that he would be subject to five years of postrelease control at the sentencing hearing, it improperly included five years of postrelease control for Count 1.

{¶ 4} We also find no merit to Tyson's argument that the trial court abused its discretion when it denied his presentence motion to withdraw his plea.

{¶ 5} We therefore affirm Tyson's convictions and sentence but remand for the trial court to issue a nunc pro tunc sentencing entry to reflect what actually occurred at the sentencing hearing. Specifically, Tyson should be classified as a Tier II sex offender with the accompany registration requirements for that classification and be subject to a mandatory period of five years of postrelease control for Count 5.

## I. Procedural History and Facts

{¶ 6} In June 2024, Tyson was charged with seven counts related to incidents involving a 16-year-old victim whom he had met online, including one count each of extortion, trespass, and possessing criminal tools and two counts each of pandering sexually oriented matter involving a minor and menacing by stalking.

{¶ 7} In November 2024, Tyson withdrew his former plea of not guilty and pleaded guilty to Count 1, extortion, a third-degree felony, and amended Count 5, attempted pandering sexually oriented matter involving a minor, a third-degree felony. As part of the plea, Tyson also agreed to forfeit a black Vortex cell phone, an iPhone, and tablet. At the request of the State, the trial court dismissed the remaining charges.

{¶ 8} The trial court set the matter for sentencing but prior to that occurring, Tyson moved to withdraw his plea. He argued that he "indicated to counsel that he did not fully understand the charges against him and the effect of a guilty plea" and that he "believed that by entering a guilty plea, his bond would be reinstated and he would be released from county jail." The trial court denied his motion.

{¶ 9} The trial court sentenced Tyson to 18 months in prison on both Count 1 and amended Count 5 and ordered that the sentences be served concurrently to one another. The trial court notified Tyson at the sentencing hearing that he would be subject to a mandatory term of five years of postrelease control and the consequences for violating the conditions of his postrelease control. The trial court also notified Tyson at the sentencing hearing that he was classified as a Tier II sex offender and the registration requirements that accompany that classification. Finally, the trial court also imposed a fine of $10,000 but suspended it and imposed costs, noting that he could pay costs either by money or community service.

{¶ 10} In the sentencing entry, however, the trial court improperly stated that Tyson was subject to five years of postrelease control for Count 1 and Count 5, when it should have just been for Count 5. And the trial court improperly stated in the sentencing entry that Tyson was classified as a Tier III sex offender. The trial court later issued a corrected entry before Tyson filed his notice of appeal, notifying Tyson that he was classified as a Tier II sex offender rather than a Tier III sex offender, but it did not include any registration requirements. Tyson appeals from his sentencing entry.

## II. Crim.R. 11 and Maximum-Penalty Advisements

### A. Crim.R. 11

{¶ 11} A defendant must enter into a plea knowingly, intelligently, and voluntarily for it to be constitutional under the United States and Ohio Constitutions. *State v. Engle*, 74 Ohio St.3d 525, 527 (1996), citing *Kercheval v. United States*, 274 U.S. 220 (1927). To ensure the constitutionality of a guilty plea in a felony case, Crim.R. 11(C) sets forth specific procedures that trial courts must follow when accepting guilty pleas, covering the waiver of constitutional rights and the explanation of nonconstitutional rights. *State v. Nero*, 56 Ohio St.3d 106, 107 (1990).

{¶ 12} Crim.R. 11(C)(2) provides that the court must address defendants personally and (1) determine that they understand the nature of the charges against them and the maximum penalty involved, (2) inform them of and determine that they understand the effect of a guilty plea and that the court may proceed with judgment and sentence, and (3) inform them of and determine that they understand the constitutional rights that they are giving up by entering into their plea. Crim.R. 11(C)(2)(a)-(c). Our focus when reviewing pleas is not "on whether the trial judge has '[incanted] the precise verbiage' of the rule . . . but on whether the dialogue between the court and the defendant demonstrates that the defendant understood the consequences of his plea." *State v. Dangler*, 2020-Ohio-2765, ¶ 12, quoting *State v. Stewart*, 51 Ohio St.2d 86, 92 (1977).

{¶ 13} When criminal defendants seek to have their convictions reversed on appeal, the traditional rule is that they must establish an error occurred in the trial-court proceedings and they were prejudiced by that error. *Dangler* at ¶ 13, citing *State v. Perry*, 2004-Ohio-297, ¶ 14-15. "The test for prejudice is 'whether the plea would have otherwise been made.'" *Id.* at ¶ 16, quoting *Nero* at 108.

{¶ 14} The Ohio Supreme Court explained in *Dangler* that there are only two instances where a defendant does not have to affirmatively show prejudice when a trial court does not fulfill its obligations under Crim.R. 11. *Id.* at ¶ 14. The first is when the "trial court fails to explain the constitutional rights that a defendant waives by pleading guilty or no contest . . . ." *Id.* Under such circumstances, prejudice is presumed. *Id.*

{¶ 15} The second exception to the prejudice requirement occurs when the trial court completely fails to comply with a portion of Crim.R. 11(C)(2). *Dangler*, 2020-Ohio-2765, at ¶ 15, citing *State v. Sarkozy*, 2008-Ohio-509, ¶ 22. Although the Supreme Court did not explain what "complete failure to comply" meant, it cited to *Sarkozy* as an example. The Supreme Court explained that in *Sarkozy*, it "held that the trial court had completely failed to comply with Crim.R. 11(C)(2)(a)'s requirement that it explain the maximum penalty when the court made no mention of postrelease control in the plea colloquy, despite the fact the defendant was subject to a mandatory five years of postrelease control." *Id.* at ¶ 15, citing *Sarkozy* at ¶ 22.

{¶ 16} When reviewing whether a plea should be vacated, the Supreme Court stated that courts must answer the following questions: "(1) has the trial court

complied with the relevant provision of the rule? (2) if the court has not complied fully with the rule, is the purported failure of a type that excuses a defendant from the burden of demonstrating prejudice? and (3) if a showing of prejudice is required, has the defendant met that burden?" *Dangler* at ¶ 17. The Supreme Court noted that this "should be a fairly straightforward inquiry." *Id.*

{¶ 17} We review whether the trial court accepted Tyson's plea in compliance with Crim.R. 11(C) de novo. *State v. Tutt*, 2015-Ohio-5145, ¶ 13 (8th Dist.), citing *State v. Spock*, 2014-Ohio-606, ¶ 7 (8th Dist.).

### B. Plea Hearing

{¶ 18} At the plea hearing, the State informed the trial court that Tyson had agreed to withdraw his former plea of not guilty and plead guilty to Count 1 and an amended Count 5. The State told the trial court that Count 1, extortion, was a third-degree felony with a potential prison sentence between 9 and 36 months, a fine up to $10,000, and a discretionary period of two years of postrelease control if Tyson was sentenced to prison. The State further informed the court that amended Count 5, attempted pandering sexually oriented matter involving a minor, was also a third-degree felony with a potential prison sentence of 9 to 36 months in prison, a fine up to $10,000, and a mandatory period of five years of postrelease control if Tyson was sentenced to prison.

{¶ 19} The State explained that by pleading guilty to a sex offense, Tyson would be classified as a Tier II sex offender, which meant that he would have to register with the sheriff where he lives, works, or is educated every 180 days for

25 years. According to the State, Tyson also agreed (1) to have no contact with the victim, (2) that the offenses were not allied offenses, and (3) to forfeit a black Vortex cell phone, a black iPhone, and a green Vortex tablet. The State asked the court to nolle the remaining charges if Tyson agreed to the conditions of his plea deal. The State said that the victim and her representative had been consulted about the plea deal and that no threats or promises had been made to Tyson other than what it had placed on the record that day.

{¶ 20} Defense counsel informed the trial court that the State's account of the plea deal was in fact the deal that Tyson had agreed to. According to defense counsel, he discussed the deal with Tyson, Tyson understood his rights and that he would be giving those rights up by entering into the plea deal, and that he understood the possible penalties involved. Defense counsel further stated, "I do believe [Tyson] has a full understanding, and his forthcoming change of pleas will be knowingly, intelligently, and voluntarily made." Defense counsel also told the court that he and Tyson had plenty of time to discuss all the issues of the case and that Tyson asked pertinent questions indicating that he understood "the risks and all the consequences."

{¶ 21} Tyson agreed with the trial court that everything his defense counsel stated was true. Tyson further told the court that he was 22 years old, was not under the influence of drugs, alcohol, or medication, had completed high school, and was currently attending "Ohio media school." Tyson told the court that he was satisfied with his counsel's representation and explained that he had a lot of questions about

his case that his defense counsel answered them. And Tyson agreed that no one had coerced or forced him to enter into the plea.

{¶ 22} The trial court informed Tyson of his constitutional rights and made sure that he understood that by entering into the plea, he would be waiving those rights. The trial court then reviewed the charges with Tyson and explained the maximum penalty for extortion under Count 1, including up to 36 months in jail, a $10,000 fine, and two years of postrelease control. For amended Count 5, the court stated that it had been reduced from a "felony 2 to a felony 3" by adding attempt. However, the court did not explain the maximum penalty for attempted pandering sexually oriented matter involving a minor or tell Tyson that he would be subject to five years of postrelease control and be classified as a Tier II sex offender.

{¶ 23} Tyson pleaded guilty to both charges, and the trial court accepted his pleas and found that he knowingly, voluntarily, and intelligently waived his constitutional rights.

## C. Postrelease Control

{¶ 24} In his first assignment of error, Tyson argues that his plea must be vacated because the trial court failed to inform him at the plea hearing that he would be subject to a mandatory period of five years of postrelease control upon his release from prison and the consequences for violating the conditions of his postrelease control. He further argues that because the trial court completely failed to inform him about postrelease control, he does not have to show that he was prejudiced by the trial court's error.

{¶ 25} Postrelease control is part of the "maximum penalty involved" when a trial court imposes a prison term. *State v. Griffin*, 2004-Ohio-4344, ¶ 13 (8th Dist.). Therefore, the first question we must ask under *Dangler,* 2020-Ohio-2765, is whether the trial court complied with Crim.R. 11(C)(2)(a), which requires that the trial court determine that the defendant is "making the plea voluntarily, with understanding of . . . the maximum penalty involved."

{¶ 26} At the plea hearing in this case, the trial court informed Tyson that by pleading guilty to extortion, he would be subject to two years of postrelease control. But the court did not inform Tyson that by pleading guilty to attempted pandering sexually oriented matter involving a minor, he would be subject to a mandatory period of five years of postrelease control or the consequences he could face for violating the conditions of his postrelease control. And although the State did place on the record at the plea hearing that Tyson would face five years of mandatory postrelease control for attempted pandering if he received a prison sentence, it did not explain the consequences for violating postrelease control. Thus, we agree with Tyson that the trial court did not comply with Crim.R. 11(C)(2)(a), i.e., it failed to inform him that he would face five years of mandatory postrelease control if he pleaded guilty to Count 5 or the consequences he could face for violating the conditions of his postrelease control.

{¶ 27} The second question under *Dangler* if the court has not fully complied with the rule is whether the purported failure is the type that excuses the defendant from the burden of establishing prejudice; i.e., did the trial court fail to

fully cover a constitutional right or completely fail to comply with another portion of Crim.R. 11? There is no question that the trial court fully informed Tyson of the constitutional rights he was waiving and made sure that he understood he was waiving them. Thus, the first exception to the prejudice requirement does not apply here. Turning to the "additional exception to the prejudice requirement" under *Dangler*, namely, whether the trial court completely failed to comply with Crim.R. 11(C)(2)(a), we find that it did not completely fail to comply. *Id.* at ¶ 15. Unlike the scenario in *Sarkozy,* 2008-Ohio-509, where the trial court "made no mention of postrelease control in the plea colloquy," the trial court informed Tyson that he would be subject to postrelease control for Count 1.

{¶ 28} "In the context of postrelease control, the Ohio Supreme Court has stated that a trial court partially complies with Crim.R. 11(C)(2)(a) when it mentions mandatory postrelease control at the plea hearing without explaining it." *State v. Jones*, 2019-Ohio-993, ¶ 16 (8th Dist.), citing *State v. Clark*, 2008-Ohio-3748. Although we no longer analyze a trial court's Crim.R. 11 colloquy for partial or substantial compliance, we find that the Supreme Court's finding of partial compliance in *Clark* to be instructive here regarding whether the trial court completely failed to discuss a mandatory penalty under the first and second questions of *Dangler,* 2020-Ohio-2765. Partial compliance means some compliance, and some compliance is not a complete failure to comply.

{¶ 29} In *State v. McKissic*, 2010-Ohio-62 (8th Dist.), the defendant argued on appeal that although the trial court informed him that he could be subject to three

years of postrelease control upon his release from prison, it did not comply with Crim.R. 11(C) because it did not inform him of the consequences of violating the conditions of postrelease control. We disagreed and explained:

> When a trial court fails to mention postrelease control "at all" during a plea colloquy, the court fails to comply with Crim.R. 11, and the reviewing court must vacate the plea and remand the cause. *Sarkozy* at ¶ 25. But "some compliance" with the rule with respect to postrelease control "prompts a substantial-compliance analysis and the corresponding 'prejudice' analysis." *Id*. at ¶ 23; *see, also, State v. Clark*, 119 Ohio St.3d 239, 2008-Ohio-3748, ¶ 32, 893 N.E.2d 462 ("If the trial judge partially complied, e.g., by mentioning mandatory postrelease control without explaining it, the plea may be vacated only if the defendant demonstrates a prejudicial effect.").

*Id*. at ¶ 13.

{¶ 30} We concluded in *McKissic* that the trial court substantially complied with the requirements of Crim.R. 11(C) when it advised the defendant about postrelease control. *Id*. at ¶ 14. We stated that despite the trial court's failure to advise him about the consequences of violating postrelease control, the court "sufficiently apprised him of the possibility of postrelease control" and McKissic "failed to show that he was prejudiced by the trial court's failure to advise him of the consequences of violating a postrelease control period that might never be imposed . . . ." *Id*.

{¶ 31} While we recognize this case was decided before *Dangler*, 2020-Ohio-2765, we believe it is still good law. Although the Ohio Supreme Court explained in *Dangler* that its prior caselaw, including *Clark*, 2008-Ohio-3748, "muddled" the Crim.R. 11(C) "analysis by suggesting different tiers of compliance"

and that "those formulations have served only to unduly complicate what should be fairly straightforward," it did not explicitly overrule its prior case law. Indeed, the "simplified" questions set forth by the Supreme Court in *Dangler* did not create an entirely new Crim.R. 11 analysis. And we highly doubt the Supreme Court intended to overrule over 50-plus years of precedential case law. The Court was merely trying to simplify the analysis that courts have been "grappling with" since 1973, which was when Crim.R. 11 was adopted. *Id.* at ¶ 12, 17. Again, partial compliance is not a complete failure to comply.

{¶ 32} Therefore, the trial court's error in this case is not the type that excuses a defendant from the burden of demonstrating prejudice because the trial court did not completely fail to discuss postrelease control with Tyson during the plea colloquy.

{¶ 33} We must now turn to the third question under *Dangler* to determine if Tyson met his burden of establishing that he would not have entered into the plea had the trial court properly informed him that he would be subject to a mandatory term of five years of postrelease control and the consequence that he could face if he violated the terms of his postrelease control. *Dangler* at ¶ 17. Regarding prejudice, the Supreme Court explained that it "must be established "'on the face of the record.'"" *Id.* at ¶ 24, quoting *Hayward v. Summa Health Sys./Akron City Hosp.*, 2014-Ohio-1913, ¶ 26, quoting *Wagner v. Roche Laboratories*, 85 Ohio St.3d 457, 462 (1999).

{¶ 34} After review, we conclude that there is nothing on the face of the record to indicate that Tyson would not have entered into his plea had the trial court informed him that he would be subject to five years of postrelease control and the consequences he would face if he violated the terms of his postrelease control. The focus on review is "whether the dialogue between the court and the defendant demonstrates that the defendant understood the consequences of his plea." *Dangler,* 2020-Ohio-2765, at ¶ 12, citing *State v. Veney*, 2008-Ohio-5200, ¶ 15-16. We have reviewed the court's dialogue with Tyson and conclude that he did.

{¶ 35} First, the State placed on the record at the plea hearing that Tyson had agreed to plead guilty to attempted pandering sexually oriented matter involving a minor under amended Count 5 and that this offense was a third-degree felony with a potential prison sentence of 9 to 36 months in prison, a fine up to $10,000, and a mandatory period of five years of postrelease control if the court sentenced him to prison. The trial court also informed Tyson that he would be subject to two years of postrelease control for Count 1. Therefore, unlike the trial court in *Sarkozy*, 2008-Ohio-509, which failed to mention postrelease control at all during the plea colloquy, Tyson was aware that he would serve a term of postrelease control.

{¶ 36} Tyson was also represented by counsel, who informed the trial court that he had discussed the plea deal with Tyson and that Tyson understood the rights he was waiving and the maximum penalties he could face. Defense counsel also told the court that he believed Tyson fully understood the plea deal and would be

entering into it knowingly, intelligently, and voluntarily. And defense counsel stated that Tyson understood all the consequences of pleading guilty.

{¶ 37} Tyson told the court that everything his defense counsel stated was true and that he was satisfied with his counsel's representation. Tyson stated that he had a lot of questions about his case, which his defense counsel answered. And Tyson stated that no one had coerced or forced him to enter into the plea.

{¶ 38} Furthermore, Tyson was originally facing up to eight years in prison for pandering sexually oriented matter involving a minor, a second-degree felony. As part of the plea deal, the State agreed to amend Count 5 to attempted pandering sexually oriented matter involving a minor, which is a third-degree felony with a maximum prison term of 36 months in prison. The trial court ultimately sentenced Tyson to 18 months in prison, half the maximum possible time. Therefore, Tyson avoided the inherent risk of going to trial and received the benefit of the plea bargain.

{¶ 39} Tyson argues that because he filed a presentence motion to withdraw his guilty plea, that is evidence of prejudice on the face of the record. We disagree. In his presentence motion to withdraw his plea, Tyson argued that he thought that by entering into the plea, the trial court would reinstate his bond and release him from jail. Because the trial court did not do so, Tyson requested in his motion that the trial court vacate his plea. We do not find that Tyson's motion establishes that he would not have entered into the plea had the trial court given him the complete postrelease-control advisement. Notably, Tyson's plea deal did not include the

promise of a particular sentence or that he would be released on bond until his sentencing hearing.

{¶ 40} After review, we conclude that Tyson has not established that he was prejudiced by the trial court's failure to inform him that he would be subject to a mandatory period of five years of postrelease control if he was sentenced to prison for attempted pandering sexually oriented matter to a minor. Tyson's first assignment of error is overruled.

### D. Sex-Offender Classification and Registration Requirements

{¶ 41} In his second assignment of error, Tyson contends that the trial court erred when it accepted his guilty plea to amended Count 5 because it did so without informing him of the consequences of being classified a Tier II sex offender. He argues that the trial court's failure was a complete failure that does not require him to show prejudice.

{¶ 42} R.C. Ch. 2950 sets forth the registration requirements, community-notification requirements, and residency restrictions that apply to sex offenders. R.C. Ch. 2950, "as a whole," is punitive in nature and, thus, is part of the maximum-penalty advisements that a trial court must explain under Crim.R. 11(C)(2)(a). *Dangler*, 2020-Ohio-2765, at ¶ 22.

{¶ 43} After review, we agree with Tyson that the trial court did not inform him that he would be classified as a Tier II sex offender or the registration requirements that accompany that classification — but the State did. At the beginning of the change-of-plea hearing, the State placed on the record that because

Tyson was pleading to a sex offense, he would be classified as a Tier II sex offender and explained that meant that he would have to register with the sheriff where he lives, works, or is educated every 180 days for 25 years. The State claims that this court has previously upheld pleas under similar circumstances, i.e., when the State placed the maximum penalty on the record at the plea hearing.

{¶ 44} The State cites *State v. Moore*, 2017-Ohio-8483 (8th Dist.), in support of its argument that we should not vacate Tyson's plea. In *Moore*, the State, rather than the trial court, explained the maximum penalty at the plea hearing. On appeal, Moore argued that the trial court failed to advise him of the maximum penalty and, therefore, he did not knowingly, voluntarily, and intelligently enter into his plea. This court disagreed, concluding that "[b]ased on the prosecutor's explanation of the maximum penalty, Moore's affirmation that he understood that explanation, and the statements made by Moore's counsel, we find no evidence of prejudice."

{¶ 45} In *Moore*, we explained that we had previously upheld a defendant's plea "even when the prosecutor, not the trial court, explains the maximum sentence." *Id*. at ¶ 24, citing *State v. Owens*, 2014-Ohio-2275, ¶ 10 (8th Dist.). In *Owens*, we noted that although it was "better practice for the trial court to advise the defendant of the maximum sentence," there was no prejudice to the defendant when the State recited the maximum penalty, Owen's attorney stated that the prosecutor correctly set forth the terms and conditions of the plea, and Owen stated he understood the plea as explained by the prosecutor and his attorney. *Id*. at ¶ 10-12.

{¶ 46} Likewise, in *State v. Chaney*, 2012-Ohio-4933 (8th Dist.), this court affirmed the defendant's convictions and sentence even though it was the prosecutor who set forth the maximum penalties at the plea hearing. We explained that "the record adequately demonstrate[d] that Chaney was informed of the potential maximum penalties for the offenses involved at the outset of the plea hearing." *Id.* at ¶ 15. We concluded that "[b]ased on the totality of the circumstances, the record show[ed] that Chaney subjectively understood the maximum potential penalties associated with her guilty plea" and that "[t]he trial court did not violate Crim.R. 11(C)(2)(a) in accepting Chaney's plea." *Id.*

{¶ 47} Again, these Eighth District cases holding that there was no prejudice to the defendant when the State placed the maximum penalty on the record were decided before *Dangler*, 2020-Ohio-2765. But as we stated previously, we do not believe that our previous cases were overruled by *Dangler*.

{¶ 48} Tyson cites to *State v. Baker*, 2020-Ohio-107, and *State v. Brown*, 2020-Ohio-4474, in support of his argument that his pleas should be vacated because the trial court failed to inform him that he would be classified as a Tier II sex offender and the accompanying registration requirements. In both cases, we noted that the State set forth the terms of the plea agreement on the record. *Baker* at ¶ 4; *Brown* at ¶ 8. But unlike the present case, there is nothing in *Baker* or *Brown* to indicate that the State placed the maximum penalty, including the advisements under R.C. Ch. 2950, on the record before the defendant entered into the plea.

{¶ 49} Thus, after review, we conclude that there was not a complete failure to inform Tyson that he would be classified as a Tier II sex offender and its accompanying registration requirements. And for the reasons stated previously, we find no prejudice to Tyson on the face of the record nor has Tyson established that he would not have pleaded guilty but for the trial court's failure. Again, he was aware of the sex-offender-classification scheme and its registration requirements because the State placed them on the record at the plea hearing. Moreover, Tyson was represented by counsel who informed the trial court that he believed Tyson fully understood his rights and the penalties he would be facing by entering into the plea and Tyson agreed that what his defense counsel told the court was true.

{¶ 50} Accordingly, we overrule Tyson's second assignment of error.

### III. Sentence

{¶ 51} In his third assignment of error, Tyson argues that his sentence as journalized is contrary to law because the trial court improperly stated that he would be subject to five years of postrelease control for both Counts 1 and 5. Tyson further argues that in the sentencing entry, the trial court stated that he was classified as a Tier III sex offender with the registration requirements that accompany that classification when it should have been a Tier II sex offender. He requests this court to remand the case for the trial court to issue a nunc pro tunc sentencing entry. The State concedes the errors, and we agree.

{¶ 52} At the sentencing hearing, the trial court properly informed Tyson that he would be subject to a mandatory five years of postrelease control and advised

him of the consequences he would face if he violated the terms of his postrelease control. In the sentencing entry, however, the trial court improperly stated that each count carried five years of postrelease control but ran them concurrently for a total of five years of postrelease control. While five years of postrelease control is what the trial court imposed at the sentencing hearing and ultimately what it imposed in the sentencing entry, it incorrectly stated in the entry that Count 1 also carried five years of postrelease control. Count 1 carried only a discretionary period of two years of postrelease control.

{¶ 53} When a trial court imposes a sentence, it must notify the defendant of and impose only the longest postrelease control applicable under R.C. 2967.28(B). *State v. Parker*, 2018-Ohio-3677, ¶ 20 (8th Dist.), citing *State v. Davis*, 2018-Ohio-1147, ¶ 69-70 (8th Dist.); *State v. Makin*, 2017-Ohio-8569, ¶ 6-8 (8th Dist.); *State v. Byrd*, 2012-Ohio-5728, ¶ 3-33 (8th Dist.); *State v. Orr*, 2011-Ohio-6269, ¶ 46-50 (8th Dist.); *State v. Morris*, 2012-Ohio-2498, ¶ 16-18 (8th Dist.); and *State v. Reed*, 2012-Ohio-5983, ¶ 12 (6th Dist.). Therefore, the court does not need to announce at the sentencing hearing or include in the sentencing entry the applicable postrelease-control sanction for each individual offense. *Id*.

{¶ 54} Additionally, the trial court properly informed Tyson he would be classified as a Tier II sex offender and the registration requirements that he must complete every six months for 25 years. Tyson subsequently signed a form detailing his duty to register and the accompanying requirements. In the sentencing entry, however, the trial court incorrectly stated that Tyson was classified as a Tier III sex

offender and included the registration requirements for that level rather than the Tier II registration requirements that it should have included. Although the trial court later issued a corrected entry notifying Tyson that he was classified as a Tier II sex offender rather than a Tier III sex offender, it did not include the registration requirements for a Tier II sex-offender classification in the corrected entry.

{¶ 55} We therefore affirm Tyson's sentence but remand for the trial court to issue a nunc pro tunc sentencing entry to reflect what actually occurred at the sentencing hearing, which includes classifying Tyson as a Tier II sex offender with the proper registration requirements and deleting five years of postrelease control for Count 1.

{¶ 56} Tyson's third assignment of error is sustained.

## IV. Presentence Motion to Withdraw Plea

{¶ 57} In his fourth assignment of error, Tyson argues that the trial court abused its discretion when it denied his presentence motion to withdraw his plea.

{¶ 58} Crim.R. 32.1, which governs motions to withdraw guilty pleas, states: "A motion to withdraw a plea of guilty or no contest may be made only before sentence is imposed; but to correct manifest injustice the court after sentence may set aside the judgment of conviction and permit the defendant to withdraw his or her guilty plea."

{¶ 59} Regarding a presentence motion to withdraw a guilty plea, while generally such a motion should be freely and liberally granted, the Ohio Supreme Court has instructed that "[t]he decision to grant or deny a presentence motion to

withdraw a guilty plea is within the sound discretion of the trial court." *State v. Xie*, 62 Ohio St.3d 521, 527 (1992), paragraph two of the syllabus. "A defendant does not have an absolute right to withdraw a guilty plea prior to sentencing. A trial court must conduct a hearing [to] determine whether there is a reasonable and legitimate basis for the withdrawal of the plea." *Id.* at paragraph one of the syllabus.

{¶ 60} This court has determined that a trial court does not abuse its discretion in overruling a motion to withdraw

> (1) where the accused is represented by highly competent counsel, (2) where the accused was afforded a full hearing, pursuant to Crim.R. 11, before he entered the plea, (3) when, after the motion to withdraw is filed, the accused is given a complete and impartial hearing on the motion, and (4) where the record reveals that the court gave full and fair consideration to the plea withdrawal request.

*State v. Peterseim*, 68 Ohio App.2d 211 (8th Dist. 1980), paragraph three of the syllabus.

{¶ 61} Additional factors this court has considered include whether (1) the motion was made in a reasonable time, (2) the motion states specific reasons for withdrawal, (3) the accused understood the nature of the charges and the possible penalties, and (4) the accused was perhaps not guilty or had a complete defense. *State v. King*, 2018-Ohio-4780, ¶ 14 (8th Dist.), citing *State v. Benson*, 2004-Ohio-1677, ¶ 8-9 (8th Dist.).

{¶ 62} The standard of review for a decision on a motion to withdraw a plea is abuse of discretion. *Xie*, 62 Ohio St.3d, at 527. An abuse of discretion implies that the court's attitude is unreasonable, arbitrary, or unconscionable. *State v. Clark*, 71

Ohio St.3d 466, 470 (1994). It involves views or actions "that no conscientious judge, acting intelligently, could honestly have taken." *State v. Hancock*, 2006-Ohio-160, ¶ 129-130.

{¶ 63} Tyson was represented by highly competent counsel. The trial court held a full hearing on Tyson's motion to withdraw, where Tyson and his counsel both had an opportunity to argue the reasons for Tyson's motion. The court explained that Tyson stated in his motion that he was requesting to withdraw his plea because he did not fully understand the charges against him or the effect of his guilty plea. Specifically, the court stated that Tyson argued that he believed that by entering into the plea, his bond would be reinstated and he would be released from jail. Because that did not happen, he wished to withdraw his plea and go to trial.

{¶ 64} Moreover, Tyson did not assert in his motion that he had a plausible defense. Indeed, he did not even claim in his motion that he had any defense. He vaguely argued that he was wrongly charged with rape, but he was never indicted on rape. He further argued that he was falsely charged but could not explain how or why he was falsely charged.

{¶ 65} The trial court also reviewed the transcript of the plea hearing and concluded that it was evident from the hearing that Tyson understood the consequences of the plea. The court also reviewed the presentence-investigation report and found that there was nothing in it to indicate that Tyson could not understand the legal system or the effect of his plea. The court noted that according

to the report, Tyson was convicted of similar crimes in 2019, when he was a minor. The trial court subsequently denied his motion.

{¶ 66} Tyson maintains that the trial court's reasons for denying his motion to withdraw were flawed. He claims that the trial court denied his motion because it determined after reviewing its notes that it had advised him of postrelease control, which meant that Tyson should have known that prison was a possibility. Tyson contends that because the trial court's reasons were flawed, it abused its discretion in denying his motion. We disagree. First, Tyson was not promised any sentence. And he agreed that no other promises were made to him to get him to enter into the plea. Moreover, as we previously determined, Tyson was aware that he could receive postrelease control.

{¶ 67} While a presentence motion to withdraw the guilty plea is to be treated liberally, it is within the sound discretion of the trial court to determine the circumstances justifying such a motion. *Peterseim*, 68 Ohio App.2d at 213-214. Our review of the record does not indicate the trial court abused its discretion in denying Tyson's presentence motion to withdraw the guilty plea.

{¶ 68} Accordingly, Tyson's fourth assignment of error is overruled.

{¶ 69} Judgment affirmed, and case remanded.

It is ordered that appellee recover from appellant the costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
MICHELLE J. SHEEHAN, PRESIDING JUDGE

EMANUELLA D. GROVES, J., and
WILLIAM A. KLATT, J.,* CONCUR

(*Sitting by assignment: William A. Klatt, J., retired, of the Tenth District Court of Appeals.)