[Cite as *State v. Giles*, 2026-Ohio-1055.]

# COURT OF APPEALS OF OHIO

# EIGHTH APPELLATE DISTRICT
# COUNTY OF CUYAHOGA

STATE OF OHIO,                          :

    Plaintiff-Appellee,          :

    v.                                    :

QASHAN GILES,                          :

    Defendant-Appellant.        :

No. 115572

---

JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED
**RELEASED AND JOURNALIZED:** March 26, 2026

---

Criminal Appeal from the Cuyahoga County Court of Common Pleas
Case No. CR-25-699388-A

---

### *Appearances:*

Michael C. O'Malley, Cuyahoga County Prosecuting Attorney, and Samantha Sohl, Assistant Prosecuting Attorney, *for appellee*.

Law Office of Anthony J. Richardson II, LLC, and Anthony J. Richardson II, *for appellant*.

DEENA R. CALABRESE, J.:

{¶ 1} Defendant-appellant Qashan Giles appeals his convictions and sentence after pleading guilty to abduction with sexual motivation and attempted felonious assault. Upon a thorough review of the record, we find that the trial court complied

with the requirements of Crim.R. 11 during the plea hearing and did not err in sentencing appellant. Accordingly, we affirm appellant's convictions and sentence.

## I. Procedural History and Relevant Facts

{¶ 2} On February 19, 2025, the Cuyahoga County Grand Jury returned a two-count indictment charging appellant with the following offenses:

Count 1: Rape, a felony of the first degree, in violation of R.C. 2907.02(A)(2); and

Count 2: Kidnapping, a felony of the first degree, in violation of R.C. 2905.01(A)(4).

{¶ 3} Both counts carried sexually violent predator specifications pursuant to R.C. 2941.148(A).

{¶ 4} Appellant initially pled not guilty. Following discovery and pretrials, the court convened for trial by jury on July 22, 2025. Appellant waived his right to a jury trial, however, on the sexually violent predator specifications.

{¶ 5} Because this case turns on appellant's plea and sentencing, we will only briefly summarize the facts adduced at trial. Appellant and C.E., an adult, met in the summer of 2023. In April 2024, they had what C.E. described as a physical relationship for approximately two weeks, then remained friends afterwards. (Tr. 85.) In October 2024, appellant asked C.E. if he could stay with her at her apartment. She obliged, and they resumed a sexual relationship at that time. C.E. testified that shortly thereafter, she ended their physical relationship and that the last time they had consensual sex was prior to November 5, 2024. Appellant nevertheless continued staying at her apartment. According to C.E., while appellant

had moved in on what he deemed an emergency basis, telling C.E. that he had nowhere to stay but would have housing in two days, "two days turned into three weeks." (Tr. 87.)

{¶ 6} C.E. testified that after their renewed intimate relationship had ended, she "slept in the bedroom and [appellant] slept on the couch." (Tr. 93.) On November 11, 2024, appellant went to a store and returned with two packs of cigarettes. According to C.E.'s testimony, he "tossed" both packs to her. (Tr. 94.) C.E. then turned around to place the cigarette packs on her nightstand. (Tr. 94.) She testified that appellant forced her onto the bed, pulled down her pants, "and then forcefully had vaginal sex" with her. (Tr. 94-96.) C.E. testified that even though she pleaded with appellant to stop, he continued to sexually assault her. (Tr. 96-97.) Appellant did not testify, but when interviewed by a police detective, he purportedly denied any sexual contact with C.E. on the date in question.

{¶ 7} Trial was completed, and the jury began deliberating on July 24, 2025. On July 25, 2025, however, the jury sent a note to the trial court indicating it was unable to reach a unanimous decision. Over appellant's objection, and relying on *State v. Howard*, 42 Ohio St.3d 18 (1989), and 2 *Ohio Jury Instructions,* CR §429.09, the trial court instructed the jury to continue its deliberations. (Tr. 396-404.)

{¶ 8} That same afternoon, while the jury continued deliberating, appellant, through counsel, engaged in further discussion with the State with respect to a possible change of plea. Appellant himself consulted with both his attorney and his

brother. After those discussions, the State offered "a new plea agreement." (Tr. 406.) The State offered to reduce the charges to felonies of the third degree. According to the transcript, the plea agreement included both appellant's classification as a Tier II sex offender and an express stipulation that "these offenses are non-allied offenses of similar import, meaning the court can sentence consecutively, if it wishes." Specifically, in the words of the prosecutor:

> Count 1 would be amended to abduction with sexual motivation in violation of Revised Code 2905.02, Subsection (B), as in boy. That carries a minimum nine months, but maximum 36 months or three years, and a maximum fine of $10,000.
>
> Count 2 would be amended to attempted felonious assault in violation of Revised Code 2923.02 and 2903.11, Subsection (A)(1). It is also a felony of the third degree. Minimum sentence is nine months, maximum sentence is 36 months, and a maximum fine of $10,000.
>
> Additionally, Your Honor, as to Count 1, it does carry with it Tier 2 sex offender registration. That is every 180 days for 25 years.
>
> Additional conditions are agreed, no contact with the victim. It's agreed that this defendant understands, by nature of this plea, he is to be classified by law as a Tier 2 sex offender for crimes that occurred after January 11 1st, 2008. And it's also as agreed that these offenses are non-allied offenses of similar import, meaning this Court can sentence consecutively, if it wishes. The maximum consecutive sentence would be six years.

(Tr. 406-407.) The State additionally offered to delete the sexually violent predator specifications as part of the plea agreement. (Tr. 408.)

{¶ 9} Appellant's counsel then addressed the trial court with respect to the plea agreement:

> I've gone over this with my client. And also, just so the record is clear, this Court did indulge us to allow my client's brother to speak to Mr. Giles regarding getting this matter resolved. I want to thank him for

his assistance in getting this matter resolved. He is in the back of the courtroom.

His assistance was invaluable getting us that result.

I've gone over this matter with my client. He's going to withdraw his prior plea of not guilty and enter the pleas indicated by the prosecutor with the attempted felonious assault, a felony of the third degree, low-tier, and abduction, again, low-tier, and be classified as a Tier 2 sex offender that would require registry every six months for 25 years. I've gone over this with him. He understands the plea. He understands the consequences. This plea is being made knowingly, intelligently, and voluntarily by Mr. Giles. Thank you.

(Tr. 408-409.)

{¶ 10} The trial court engaged in a Crim.R. 11 colloquy with appellant prior to accepting his plea. It confirmed that he was 29 years of age, that he had stayed in school "[a]ll the way to 12th grade," and that he could read and write. (Tr. 410-411.) The trial court asked appellant if he understood the plea agreement. Appellant responded: "A little bit, yes, I do." (Tr. 410.) The trial court was not satisfied with that response, stating: "Okay. Well then I'll give you an opportunity to — if it's a little bit, I'm going to give you an opportunity to talk to your attorney to make sure you understand everything about it." (Tr. 411.) While the transcript does not indicate a formal recess, the trial court next noted: "Okay. So you've had an opportunity to discuss matters with your attorney, so I'll reask you the same question." (Tr. 411.) This time appellant answered in the affirmative when asked whether he understood the plea agreement, responding, "Yes, I do, Your Honor." (Tr. 411.)

{¶ 11} Appellant confirmed he was not on medication that could impair his thinking and that he was not under the influence of drugs or alcohol. (Tr. 412.) The trial court confirmed appellant had not been threatened or forced to enter a plea and that no promises had been made, including by the trial court, with respect to a possible sentence. (Tr. 414.) Appellant further indicated he was satisfied with the quality of his attorney's representation. (Tr. 414-415.)

{¶ 12} The trial court then engaged in an extensive colloquy regarding appellant's constitutional rights, including the presumption of innocence, the State's burden of proof, and the rights he would be giving up by pleading guilty. (Tr. 415-417.) The trial court next repeated the terms of the plea deal, again discussing Tier II sex offender registration requirements and the fact that appellant and his attorney "have . . . that form in front of them." (Tr. 417 -418.) It continued:

> THE COURT: I also recognize that there this is [sic] a form that is in front of both defense counsel and the defendant. And, [defense] Counsel . . . you've had an opportunity to review that with your client?
>
> [DEFENSE COUNSEL]: I have, and he's ready to sign the form.
>
> THE COURT: Okay. And, obviously, we can address that at the time of sentencing as well.

(Tr. 419.)

{¶ 13} After further discussion of the amended charges, the trial court confirmed with defense counsel that his client "agree[d] the offenses are not allied offenses of similar import." (Tr. 421.) The trial court then confirmed that appellant understood "the offenses to which [he was] pleading guilty" and "the possible maximum penalties," including postrelease control (Tr. 421-423.) The trial court

further confirmed appellant's understanding that he faced possible consecutive sentences:

> [THE COURT]: As was previously mentioned, you should be aware that your offenses could run one after another, which is called consecutive, and also could run at the same time, which is called concurrent. Do you understand that?
>
> THE DEFENDANT: Yes, I do.

(Tr. 423-424.)

{¶ 14} The trial court asked appellant if he had any questions about his "rights, the charges, the penalties, or anything that's been done here today[.]" (Tr. 424.) Appellant answered that he had a question about "the charge," and more specifically about whether he would be able to see his nieces:

> THE COURT: You have a question about the charge?
>
> THE DEFENDANT: Yes, about like the kid situation, like I got nieces and stuff. Would that be like I not be able to see them?
>
> [DEFENSE COUNSEL]: I'm sorry. I don't understand what you're saying.
>
> THE DEFENDANT: Would I be —
>
> [DEFENSE COUNSEL]: Well, we don't know what the sentence is going to be. We're not doing sentencing today.
>
> THE COURT: Right.
>
> [DEFENSE COUNSEL]: All we're doing now is entering a plea. That's all we're doing.
>
> THE DEFENDANT: I have no questions. I'm sorry.
>
> THE COURT: So just so you're aware, and I'm pretty thorough about things, my job is just to let you know anything possible that can happen based off of this plea agreement before you enter your plea. Okay? So that's my job, is to just give you all of this information so that you're

able to make it knowingly and voluntarily and with a full understanding. Does that make sense?

THE DEFENDANT: Yes, it does.

THE COURT: I know it's a lot of information. That's why I'm giving it all to you. Okay? So I'll ask you again, do you have any questions about your rights, the charges, the penalties, or anything that's been done here today?

THE DEFENDANT: No, I don't.

(Tr. 424-425.)

{¶ 15} The trial court confirmed with defense counsel that he was satisfied that the court had complied with Crim.R. 11. (Tr. 425.) It then asked appellant for his plea. Appellant pled guilty to the amended Count 1, abduction with sexual motivation, a felony of the third degree in violation of R.C. 2905.02(B) with a Tier II sex offender registration requirement, as well as amended Count 2, attempted felonious assault, a felony of the third degree pursuant to R.C. 2923.02 and 2903.11(A)(1). (Tr. 426.) The trial court again noted on the record that appellant had been advised that the "offenses are not allied offenses of similar import." (Tr. 426.)

{¶ 16} Sentencing took place on September 5, 2025. The trial court heard remarks from the State, victim C.E. (through an advocate), C.E.'s mother, appellant's counsel, and appellant himself in allocution. As the State notes, because the parties reached the plea deal while the jury was deliberating, the trial court had the benefit of presiding over the entire trial and hearing the testimony of each and every witness. The trial court imposed a sentence of 36 months in prison on Count

1 and 30 months on Count 2. The trial court ordered the sentences served consecutively, for an aggregate total of 66 months, making the following consecutive-sentence findings on the record pursuant to R.C. 2929.14(C)(4):

> Pursuant to Ohio Revised Code 2929.14(C)(4), the Court also makes the following findings in support of an imposition of consecutive sentences:
>
> The Court makes a finding that a consecutive sentence is necessary to protect the public from future crime or to punish the offender, and that consecutive sentences are not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public, and the Court also makes the following finding:
>
> That at least two of the multiple offenses were committed as part of one or more courses of conduct and that the harm caused by two or more of the multiple offenses so committed was so great or unusual that no single prison term for any of the offenses committed as part of any of the courses of conduct adequately reflects the seriousness of the offender's conduct. So the Court makes that finding so the sentences will run consecutively.

(Tr. 469.) The trial court again stated that appellant understood the Tier II sex offender designation and that the "offenses are not allied offenses of similar import." (Tr. 470.) The trial court's sentencing entry likewise included the consecutive sentence findings.

{¶ 17} Finally, the trial court imposed a period of postrelease control, specifically a mandatory minimum of one year, up to a maximum of five years.

{¶ 18} This timely appeal followed.

## II. Assignments of Error

{¶ 19} Appellant presents four assignments of error for our review:

> Assignment of Error 1: Reversal is proper where appellant did not make a knowing, intelligent, and voluntary plea.

Assignment of Error 2: Reversal is proper because the court's imposition of consecutive sentences is unconstitutional and plain error.

Assignment of Error 3: Reversal is proper where appellant's counsel failed to act reasonable when agreeing that the offenses were not allied and, thus, subject to merger.

Assignment of Error 4: The trial court failed to order a definite sentence, leaving the executive branch to act as judge.

{¶ 20} Finding no merit to any of appellant's assignments of error, we affirm.

## III. Analysis

### A. Knowing, Intelligent, and Voluntary Plea

{¶ 21} In his first assignment of error, appellant argues that his guilty plea "was not entered [into] intelligently, knowingly, or voluntarily." (Appellant's brief at p. 10.) More specifically, he argues that the trial court did not sufficiently respond to his evident confusion surrounding how his sex-offender classification might affect his relationship with his family. Appellant argues

> that his plea was not entered into knowingly, intelligently, or voluntarily because the trial court left no clarity regarding the imposition and classification of Tier II Sex Offender Registration and Requirements under R.C. 2950.01. Specifically, here appellant questioned what the imposition and classification were about and why the court kept mentioning children where his niece would be affected by his classification; but, there was no conclusive response or helpful information given during the exchange or colloquy. *See* [tr.] 424. Appellant argues that because he was not aware to what extent the sex offender classification would affect him and his family, he should not have to be stuck with a plea deal that set him up for extended restrictions (25 years) without him fully being made aware and hence knowing about them.

(Appellant's brief at p. 11.) We find these arguments unpersuasive.

**{¶ 22}** Because "a guilty plea involves the waiver of constitutional rights, the decision to enter the plea must be knowing, intelligent, and voluntary." *State v. Johnson*, 2025-Ohio-5513, ¶ 7 (8th Dist.), citing *State v. Dangler,* 2020-Ohio-2765, ¶ 10. Enforcement of a plea is unconstitutional if the plea was not made knowingly, intelligently, and voluntarily. *Johnson* at ¶ 7, citing *Dangler* at ¶ 10. As this court wrote in *Johnson*:

> Crim.R. 11 "outlines the procedures that trial courts are to follow when accepting pleas." [*Dangler*] at ¶ 11. The rule "'ensures an adequate record on review by requiring the trial court to personally inform the defendant of his rights and the consequences of his plea and determine if the plea is understandingly and voluntarily made.'" *Id.*, quoting *State v. Stone*, 43 Ohio St.2d 163, 168, 331 N.E.2d 411 (1975). As part of the Crim.R. 11 plea colloquy, the trial court must inform the defendant of the constitutional rights he is waiving by pleading guilty. These rights, which are set forth in Crim.R. 11(A)(2)(c), are "the right to a jury trial, the right to confront one's accusers, the privilege against self-incrimination, the right to compulsory process to obtain witnesses, and the right to require the state to prove guilt beyond a reasonable doubt." *Id.* at ¶ 14. When a court fails to adequately inform a defendant of these constitutional rights, it is presumed that the defendant did not enter the plea knowingly, intelligently, and voluntarily. *Id.*
>
> A trial court complies with Crim.R. 11(C)(2)(c) when it "orally advises the defendant in a manner reasonably intelligible to the defendant that the plea waives the rights enumerated in the rule." *State v. Miller*, 159 Ohio St.3d 447, 2020-Ohio-1420, ¶ 22, 151 N.E.3d 617. It is important to note, however, that "a trial court can still convey the requisite information on constitutional rights to the defendant even when the court does not provide a word-for-word recitation of the criminal rule, so long as the trial court actually explains the rights to the defendant." *State v. Veney*, 120 Ohio St.3d 176, 2008-Ohio-5200, ¶ 8, 897 N.E.2d 621. With this in mind, in reviewing a trial court's Crim.R. 11 colloquy to ensure that a defendant's plea is knowing and voluntary, appellate courts focus on "whether the dialogue between the court and the defendant demonstrates that the defendant understood the consequences of his plea." *Dangler* at ¶ 12, citing *Veney* at ¶ 15-16; *State v. Clark*, 119 Ohio St.3d 239, 2008-Ohio-3748, ¶ 26, 893 N.E.2d 462; *Miller* at ¶ 19. In reviewing a plea's compliance with Crim.R.

11(C), appellate courts apply a de novo standard of review. *See State v. Lebron*, 2020-Ohio-1507, ¶ 9 (8th Dist.).

*Johnson* at ¶ 8-9.

{¶ 23} Appellate review of the trial court's compliance with Crim.R. 11 involves the following analysis:

> "(1) has the trial court complied with the relevant provision of the rule? (2) if the court has not complied fully with the rule, is the purported failure of a type that excuses a defendant from the burden of demonstrating prejudice? and (3) if a showing of prejudice is required, has the defendant met that burden?"

*State v. Ponomarenko*, 2024-Ohio-4789, ¶ 15 (8th Dist.), quoting *Dangler* at ¶ 17. *See also State v. Fontanez*, 2024-Ohio-4579, ¶ 9 (8th Dist.).

{¶ 24} As discussed above, the focus on review is "whether the dialogue between the court and the defendant demonstrates that the defendant understood the consequences of his plea[.]" *Dangler* at ¶ 12, citing *State v. Veney*, 2008-Ohio-5200, ¶ 15-16; *State v. Clark*, 2008-Ohio-3748, ¶ 26; *State v. Miller*, 2020-Ohio-1420, ¶ 19. A criminal defendant asking an appellate court to reverse a conviction must show that an error occurred in the trial court proceedings and that he was prejudiced by that error. *Dangler* at ¶ 13; *see State v. Perry*, 2004-Ohio-297, ¶ 14-15; *State v. Stewart*, 51 Ohio St.2d 86, 93 (1977); Crim.R. 52. The test for prejudice is "whether the plea would have otherwise been made." *State v. Nero*, 56 Ohio St.3d 106, 108 (1990).

{¶ 25} Appellant's arguments are based entirely upon authority that predates *Dangler*, 2020-Ohio-2765. In that case, the Ohio Supreme Court first held that "[b]ecause the trial court . . . advised Dangler that he would be subject to the [sex

offender] registration requirements of that statutory scheme, the trial court did not completely fail to comply with Crim.R. 11(C)(2)(a)'s maximum-penalty-advisement requirement." *Dangler* at ¶ 22. It next held that because the "maximum-penalty advisement is not a constitutional requirement," no "exceptions to the prejudice requirement apply." *Id*. at ¶ 23. As a result, Dangler could prevail "only by establishing that he would not have pleaded no contest but for the trial court's failure to explain the sex-offender-classification scheme more thoroughly." *Id*. at ¶ 23. In summary:

> When a trial court has told a defendant that he is subject to the sex-offender-registration scheme, that defendant is entitled to have his conviction vacated for lack of a more complete explanation only if he demonstrates prejudice — that is, that he would not have entered the plea but for the incomplete explanation.

*Dangler* at ¶ 2.

{¶ 26} The trial court's colloquy apprised appellant of his constitutional rights and included extensive questioning regarding appellant's level of education, his ability to read, and whether he was intoxicated or using any substances that might impair his judgment. When appellant expressed some confusion about the nature of the plea, the trial court gave him time to consult with counsel, after which he indicated he understood the plea agreement. Most importantly for this assignment of error, the trial court comprehensively delineated the consequences of appellant's classification as a Tier II sex offender, including registration requirements, the obligation to report changes, and limitations on living within a certain distance from schools. Defense counsel agreed the explanation was accurate

and further indicated that he reviewed the relevant form with appellant, who was ready to sign it.

{¶ 27} In light of all this, we are not convinced that we must reach the issue of prejudice. Indeed, appellant has not argued on appeal that the trial court provided either incorrect or incomplete information regarding his sex-offender classification or the associated requirements, limitations, and responsibilities. Nor could he reasonably do so. As noted above, the transcript reflects that the trial court covered the registration issue comprehensively.

{¶ 28} Appellant, therefore, cannot claim that the trial court erred in its advisements regarding the *relevant* aspects of the sex-offender classification, such as registration requirements, limitations on living near certain facilities, and other matters that the trial court exhaustively covered. Instead, he points to his evident confusion regarding how the sex-offender classification would affect his relationship with his family. This court, however, has held that "a trial court is not required to inform an accused about collateral consequences to a plea, including potential outcomes that do not have an effect on the sentence when the judge accepts the plea." *State v. Resto*, 2020-Ohio-4299, ¶ 26 (8th Dist.), citing *State v. Moore*, 1998 Ohio App. LEXIS 3293, *4 (8th Dist. Aug. 27, 1998), and *State v. Beatty*, 2000 Ohio App. LEXIS 5821, *10 (8th Dist. Dec. 14, 2000). "'[I]n order for a plea to be knowing, voluntary, and intelligent, a defendant must only be made aware of the *direct* consequences of the plea, and the trial court is not required to inform the defendant of all possible *collateral* consequences.'" (Emphasis added.) *State v. Radovanic*,

2013-Ohio-4157, ¶ 15 (10th Dist.), quoting *State v. Dumas*, 2008-Ohio-4896, ¶ 14 (8th Dist.). A direct consequence of a plea is "an immediate and automatic consequence." (Cleaned up.) *Radovanic* at ¶ 15.

{¶ 29} Consistent with those principles, the trial court responded to appellant's inquiry by clarifying that its job was to provide information concerning appellant's "rights, the charges, [and] the penalties." (Tr. 425.) In that regard, appellant's counsel had already confirmed that he had reviewed the plea with appellant, including the sex-offender classification and the related form, and that appellant understood the classification and his obligations. When the trial court asked again if appellant had questions regarding the plea, including his rights, the charges, potential penalties, "or anything else that's been done here today," appellant responded, "No, I don't." (Tr. 425.) The direct consequences of appellant's Tier II classification were precisely those laid out by the trial court. Nothing more was required, in this respect, for his plea to be knowing, voluntary, and intelligent.

{¶ 30} This court has previously held that the trial court substantially complies with Crim.R. 11 where "'[t]he totality of circumstances indicate that appellant subjectively understood that by pleading guilty to a sexually oriented offense, he would be subjected to certain restrictions as a . . . sex offender.'" *State v. Johnson*, 2018-Ohio-5029, ¶ 20 (8th Dist.), *aff'd*, 2020-Ohio-3023, quoting *State v. Creed*, 2012-Ohio-2627, ¶ 17 (8th Dist.). As discussed above, however, appellant has not argued that the trial court inadequately explained the actual consequences of his

sex-offender classification. This distinguishes the present matter from cases such as *State v. Hindman*, 2023-Ohio-1974, ¶ 22 (8th Dist.), where this court vacated a plea because "no advisement whatsoever as to the sex-offender classification was given to [Hindman] prior to his plea." *Id*. at ¶ 22. In *Dangler*, 2020-Ohio-2765, "[t]he Ohio Supreme Court concluded that when a trial court advises the offender that he would be subject to the classification requirements of that statutory scheme, the court has not completely omitted the necessary advisements." *State v. Fisher*, 2021-Ohio-1592, ¶ 14 (8th Dist.), citing *Dangler* at ¶ 22.

{¶ 31} We will nevertheless address the issue of prejudice. Even if we assume, contrary to the transcript, that the trial court's sex-offender advisements were somehow deficient, under *Dangler* and its progeny "[t]he analysis then turns to whether the offender was prejudiced as a result of the advisements that were or were not given by the court." *Fisher* at ¶ 14. As discussed above, "[p]rejudice is demonstrated by showing that but for the failings of the trial court, the defendant would not have otherwise entered the plea." *Fisher* at ¶ 9, citing *Nero*, 56 Ohio St.3d at 108. Here, as in *Fisher*, appellant has "made no arguments whatsoever regarding prejudice" as that term is used in this context. *Fisher* at ¶ 16. He does not argue that he would have rejected the plea if the trial court had provided a more fulsome response to his inquiry about the sex offender classification's effect on his relationship with his family. *See State v. Tyson*, 2025-Ohio-3074, ¶ 50 (8th Dist.) (no complete failure to inform defendant that he would be classified as a Tier II sex offender with accompanying registration requirements, and defendant failed to

demonstrate that he would not have pled guilty but for any omissions). Indeed, neither the word "prejudice" nor any variant thereof appears in appellant's brief in connection with this assignment of error. Because appellant failed to demonstrate prejudice, his argument collapses.

{¶ 32} Appellant's first assignment of error is overruled.

## B. Imposition of Consecutive Sentences (Nonmerger)

{¶ 33} In the second assignment of error, appellant challenges the trial court's imposition of consecutive sentences. He does not argue, however, that the trial court failed to make the requisite findings under R.C. 2929.14(C)(4) regarding the propriety of consecutive sentences or that it failed to incorporate those findings into its sentencing entry. Rather, appellant's core argument is that the trial court should have merged his abduction with-sexual-motivation and attempted felonious-assault convictions as allied offenses of similar import for the purpose of sentencing. He claims those offenses occurred as a single event committed through the same conduct and animus. Appellant contends that the trial court's failure to merge the offenses violated R.C. 2941.25 and thus his right to be protected from double jeopardy.[1]

---

[1] "R.C. 2941.25 codifies the protections of the Double Jeopardy Clause of the U.S. Const., amend. V, and of the Ohio Const., art. I, § 10, prohibiting multiple punishments for the same offense." *State v. Jenkins*, 2025-Ohio-2143, ¶ 36 (8th Dist.), citing *State v. McCarty*, 2015-Ohio-4695, ¶ 13 (8th Dist.). Accordingly, "R.C. 2941.25 . . . instructs the courts to determine whether a defendant's conduct, which violates multiple statutes, are separate offenses or can be merged." *State v. Jeffrey*, 2023-Ohio-817, ¶ 32 (8th Dist.).

{¶ 34} We do not find this argument compelling, and we will not discuss the underlying facts any further, because appellant has waived merger arguments. The transcript, at multiple junctures, reflects that as part of his plea agreement appellant expressly agreed that the offenses were not allied. In *State v. Underwood*, 2010-Ohio-1, the Ohio Supreme Court stated that "nothing in this decision precludes the state and a defendant from stipulating in the plea agreement that the offenses were committed with separate animus, thus subjecting the defendant to more than one conviction and sentence." *Id*. at ¶ 29. Accordingly, "[i]t is possible for an accused to expressly waive the protection afforded by R.C. 2941.25" through such a stipulation. *State v. Rogers*, 2015-Ohio-2459, ¶ 20, citing *Underwood* at ¶ 29.

{¶ 35} This court has therefore held that "when the transcript demonstrates the state and defense counsel specifically agreed that the offenses were not allied, the issue of allied offenses is waived." *State v. Adams*, 2014-Ohio-3496, ¶ 10 (8th Dist.), citing *State v. Yonkings*, 2013-Ohio-890 (8th Dist.), *State v. Carman*, 2013-Ohio-4910 (8th Dist.), and *State v. Ward*, 2012-Ohio-1199 (8th Dist.). *See also State v. T.B.*, 2021-Ohio-2104, ¶ 25-26 (8th Dist.) (because transcript demonstrated that defendant and the State agreed the offenses were not allied, the issue of allied offenses was waived); *State v. Menefee*, 2025-Ohio-1932, ¶ 13 (8th Dist.) ("[B]ecause appellant agreed that the offenses were not allied offenses of similar import and because her sentence comported with all mandatory sentencing provisions, her sentence was authorized by law and is not subject to appellate review."); *State v. Wright*, 2016-Ohio-5248, ¶ 6 (8th Dist.) ("When the transcript

demonstrates that the state and defense counsel agreed that the offenses were not allied, the issue of allied offense is waived on appeal.").

{¶ 36} Appellant's plain-error argument is likewise unpersuasive. In *Adams*, the appellant specifically argued "that it was plain error for the trial court to fail to consider merging the sentences even if the sentence was agreed to." *Adams* at ¶ 11. This court rejected that contention, stating that "*Underwood* does not require the trial court to determine whether the offenses actually merge before accepting the plea when the parties have specifically entered into an agreement that they do not merge." *Adams* at ¶ 13. Rather, it is only "when the parties fail to discuss the merger that the trial court is obligated to determine if the offenses are allied offenses." *Id.*

{¶ 37} Moreover, "even plain error may be an invited error, in which case the error is not reversible." *State v. Reeder*, 2025-Ohio-110, ¶ 19 (8th Dist.). In that regard, "courts have routinely applied the invited-error doctrine to negotiated plea agreements." *Id.* at ¶ 13. "It would be unfair to the State to allow [appellant] to retain the benefit of reduced charges without requiring him to keep his end of the deal." *Id.*

{¶ 38} Appellant's second assignment of error is overruled.

## C. Ineffective Assistance of Counsel

{¶ 39} In his third assignment of error, appellant contends his trial counsel was ineffective for stipulating that the offenses to which he pled guilty were not allied offenses of similar import subject to merger. We find no merit to this argument.

{¶ 40} To establish a claim of ineffective assistance of counsel, appellant "'must demonstrate that (1) his counsel was deficient in some aspect of his representation and (2) there is a reasonable probability that, were it not for counsel's errors, the result of the [proceeding] would have been different.'" *State v. Thompson*, 2024-Ohio-5910, ¶ 5 (8th Dist.), quoting *In re S.A.*, 2019-Ohio-4782, ¶ 46 (8th Dist.), citing *Strickland v. Washington*, 466 U.S. 668, 687-688, 694 (1984). "Reasonable probability" is "probability sufficient to undermine confidence in the outcome." *Strickland* at 694.

{¶ 41} As this court stated in *Thompson*, "'[T]he failure to make a showing of *either* deficient performance or prejudice defeats a claim of ineffective assistance of counsel.'" (Emphasis added.) *Thompson* at ¶ 5, quoting *In re S.A.* at ¶ 46. *See also State v. Davenport*, 2018-Ohio-2933, ¶ 25 (8th Dist.). To put it even more explicitly, "The failure to prove either prong of *Strickland's* two-part test makes it unnecessary for a reviewing court to consider the other prong." *State v. McCann*, 2025-Ohio-966, ¶ 18 (8th Dist.), citing *State v. Madrigal*, 87 Ohio St.3d 378, 389 (2000).

{¶ 42} "Deficient performance, the first prong of the *Strickland* test, requires a showing 'that counsel's representation fell below an objective standard of reasonableness.'" *McCann* at ¶ 18, quoting *Strickland* at 688. "In Ohio, every properly licensed attorney is presumed to be competent and, therefore, a defendant claiming ineffective assistance of counsel bears the burden of proof." *In re S.A.* at ¶ 47, citing *State v. Smith*, 17 Ohio St.3d 98, 100 (1985). *See also McCann* at ¶ 18. Moreover, "Counsel's tactical decisions or trial strategy cannot form the basis for a

claim of ineffective counsel." *In re S.A.* at ¶ 47, citing *State v. Foster*, 2010-Ohio-3186, ¶ 23 (8th Dist.). *See also State v. Clayton*, 62 Ohio St.2d 45 (1980).

{¶ 43} Reviewing courts "'will strongly presume that counsel rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment.'" *McCann* at ¶ 17, quoting *State v. Powell*, 2019-Ohio-4345, ¶ 69 (8th Dist.); *see also Strickland*, 466 U.S. at 689 (A reviewing court "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance."). We therefore afford "great deference" to "trial counsel's performance and tactical decisions and trial strategies." *McCann* at ¶ 17. Even "debatable" or "questionable" trial tactics generally "do not constitute ineffective assistance of counsel." *State v. Harris*, 2022-Ohio-4630, ¶ 50 (8th Dist.), citing *State v. Scarton*, 2020-Ohio-2952, ¶ 90 (8th Dist.). Appellate courts therefore "'ordinarily refrain from second-guessing strategic decisions counsel make at trial' . . . even where appellate counsel argues that he or she would have defended against the charges differently." *Scarton* at ¶ 90, quoting *State v. Myers*, 2002-Ohio-6658, ¶ 152. *See also State v. Stewart*, 2024-Ohio-5802, ¶ 54 (8th Dist.).

{¶ 44} "A claim of ineffective assistance of counsel is waived by a guilty plea, except to the extent that the ineffective assistance of counsel caused the defendant's plea to be less than knowing, intelligent and voluntary." *Wright*, 2016-Ohio-5248, at ¶ 10 (8th Dist.), citing *State v. Williams*, 2014-Ohio-3415, ¶ 11 (8th Dist.), citing *State v. Spates*, 64 Ohio St.3d 269, 272 (1992), citing *Tollett v. Henderson*, 411 U.S. 258, 267 (1973). Moreover, when a defendant has entered a guilty plea, "the

defendant can prevail on an ineffective assistance of counsel claim only by demonstrating that there is a reasonable probability that, but for counsel's deficient performance, *he would not have pled guilty to the offenses at issue and would have insisted on going to trial.*" (Emphasis added.) *Wright* at ¶ 10, citing *Williams* at ¶ 11, citing *State v. Xie*, 62 Ohio St.3d 521, 524 (1992), and *Hill v. Lockhart*, 474 U.S. 52 (1985).

{¶ 45} We have already concluded that appellant entered into his plea knowingly, intelligently, and voluntarily after a full Crim.R. 11 plea colloquy, an exchange that included references to the nonmerger of offenses and the possibility of consecutive sentences. This court noted in *Wright* that it

> has previously rejected ineffective assistance of counsel arguments based on counsel's advice in entering into a stipulation of non-merger of allied offenses as part of a plea agreement because defendants are unable to demonstrate prejudice where they secure reduced charges and potential sentences.

*Wright* at ¶ 11, citing *Yonkings*, 2013-Ohio-1890, at ¶ 8-11 (8th Dist.), and *State v. Booker*, 2015-Ohio-2515, ¶ 12-16 (8th Dist.).

{¶ 46} Appellant contends he has been prejudiced by being sentenced to "an extra 30 months in jail." (Appellant's brief at p. 16.) This argument, however, does not demonstrate a reasonable probability that but for trial counsel's performance, appellant would not have pled guilty to the offenses at issue. Moreover, as in *Wright*, trial counsel secured reduced charges and potential sentences thanks to the non-merger stipulation. Appellant originally faced two felonies of the first degree. If appellant had been convicted, the rape charge carried mandatory prison time

pursuant to R.C. 2929.13(F)(2). The kidnapping charge carried a presumption of prison. *State v. Davis*, 2017-Ohio-7323, ¶ 17 (8th Dist.). Appellant also faced a sexually violent predator specification requiring a mandatory sentence under R.C. 2971.03. After appellant and his counsel were exposed to all of the State's evidence at trial, his attorney secured a plea agreement that — conditioned upon the nonmerger stipulation — amended each count to felonies of the third degree carrying no mandatory prison time and eliminating the sexually violent predator specification. Given this outcome, appellant has not demonstrated that trial counsel's performance was deficient under the first prong of *Strickland* or that he was prejudiced under the second prong of *Strickland*.

{¶ 47} Appellant's third assignment of error is overruled.

### D. Separation of Powers and Postrelease Control

{¶ 48} In his fourth assignment of error, appellant argues that the trial court's imposition of postrelease control for a mandatory minimum of one year and up to a maximum of three years violates the separation-of-powers doctrine and that the trial court was required to impose a definite term of postrelease control rather than a statutory range. This court rejected this exact argument in *State v. McFarland*, 2025-Ohio-3287, ¶ 12 (8th Dist.), holding that "Ohio's postrelease control statutory scheme does not violate the separation-of-powers doctrine." *Id*. at ¶ 13. This court further found that the trial court did not err when it imposed a statutory range rather than a definite period: "McFarland cites no Ohio law that takes this position, and upon review, we find that there is no basis in the law for this

argument." *Id.* at ¶ 14. This court then cited R.C. 2967.28(B)(4) and held that the trial court "properly applied postrelease control at McFarland's sentencing hearing when it notified him that he was subject to a one-to-three-year period of postrelease control upon his release from prison." *Id.* at ¶ 17.

{¶ 49} At oral argument and in his brief, appellant highlighted the Sixth District's more recent opinion in *State v. Whitney*, 2025-Ohio-4978 (6th Dist.). We find that case wholly distinguishable because neither party raised the arguments appellant makes in this assignment of error. In *Whitney*, as here, the trial court imposed postrelease control consisting of a statutory range. But neither party made a separation-of-powers argument, and the Sixth District never entertained either that argument or a contention that the trial court erred by imposing a statutory range. Rather, the sole issue regarding postrelease control stemmed from "an apparent scrivener's error in the drafting of the sentencing entry." *Id.* at ¶ 20. "[A]t the sentencing hearing the trial court informed Whitney that he was subject to postrelease control of not less than 18 months nor more than three years on the count of felonious assault." *Id.* at ¶ 9. The trial court's journal entry, however, "included *all* potential terms of postrelease control instead of selecting the one(s) imposed at the sentencing hearing and applicable to Whitney." (Emphasis added.) *Id.* at ¶ 20. It was the State, in fact, that raised this issue in its cross-appeal. The *Whitney* Court found this to be an "obvious error" and merely remanded the case for nunc pro tunc entries "to correct the scrivener's error and to reflect what the trial court actually decided at the sentencing hearing." *Id.* at ¶ 20-22. *Whitney* did not

come within commuting distance of the arguments appellant raises in this assignment of error.

{¶ 50} Appellant's fourth assignment of error is overruled.

{¶ 51} Judgment affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution. The defendant's convictions having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
DEENA R. CALABRESE, JUDGE

MARY J. BOYLE, P.J., and
EILEEN A. GALLAGHER, J., CONCUR